**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ADEL ABBA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 6138 |
| | ) | |
| BRITISH AIRWAYS PLC, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On board an international flight operated by British Airways PLC ("British Airways"), Adel Abba tripped, fell, and suffered an injury to one of his fingers. Abba thereafter filed a claim for negligence against British Airways in the Circuit Court of Cook County, which British Airways removed to this court. All parties now agree that Abba's claim is governed by the Montreal Convention, a United States treaty that provides strict liability for a passenger injury caused by an "accident" on an international flight. British Airways now moves for summary judgment, asserting that Abba's factual allegations do not constitute such an accident. For the reasons stated below, British Airways' motion is denied.

## STATEMENT OF FACTS

### I. The Incident

On March 20, 2016, Plaintiff Adel Abba was traveling from Milwaukee, Wisconsin to Paris, France. (Def.'s 56.1 [23-12] ¶ 6.) Abba's airline ticket included a stop-over in Chicago, Illinois and, due to a missed connection in Chicago, Abba was assigned a second stop-over in London, England. (*Id.*) Relevant here is the flight from Chicago to London, British Airways flight 296. (*Id.*) The following summarizes Abba's recollection of the flight.[1] Three to four hours after takeoff, after

---

[1]     Abba is a resident of Paris and a native French speaker. (Def.'s 56.1 [23-12] ¶ 1; Pl.'s 56.1 St. Add.'l Facts [27] ¶ 1.) Accordingly, his deposition answers were translated by a professional interpreter. (*Id.*)

beverages had been served, Abba was in the plane's lavatory. (*Id.* ¶ 13.) When Abba exited the lavatory, he saw that a beverage cart was partially in the aisle. (Abba Dep. at 26-27, Ex. F to Battista Aff. [23-4].) A flight attendant was holding the beverage cart. (*Id.* at 27.) Without saying anything to the flight attendant, and without the flight attendant saying anything to him, Abba took two steps toward the cart and attempted to pass the cart on one of its sides. (*Id.* at 26-27.) As he was doing so, the flight attendant moved the cart; Abba believes this was an attempt to give him more room to pass, as there "really [wasn't] that much room." (*Id.* at 28-29.) The flight attendant, however, "moved [the cart] the wrong way towards [Abba]." (*Id.* at 27.) Consequently, Abba tripped over the wheel of the cart, resulting in his injury. (*Id.* at 27-28.)

British Airways prepared an incident report regarding Abba's injury. (Def.'s 56.1 ¶ 13.) This report states that Abba tripped over his shoelace and struck his hand on the beverage cart. (*Id.*) Abba testified that at the time of the incident he was in fact wearing shoes with no laces. (Pl.'s 56.1 St. Add.'l Facts [27] ¶ 3.) Abba brought one of these shoes to his deposition, where counsel for the Defendant identified the shoe as having a black Velcro strap. (Abba Dep. at 21-22.)

## II.    Procedural History

On August 9, 2017, Abba filed a complaint in the Circuit Court of Cook County, Illinois, charging British Airways with common law negligence. (Complaint, Ex. A to Notice of Removal [3].) On August 23, 2017, British Airways removed the case pursuant to 28 U.S.C. § 1331, which grants federal courts original jurisdiction in civil actions arising under treaties of the United States. (Notice of Removal [3].) British Airways asserted, and Abba now agrees, that Article 17 of the Montreal Convention exclusively governs this dispute. (*Id.* ¶ 6; Pl.'s Resp Def.'s MSJ [27-6] at 1.) On July 30, 2018, British Airways moved for summary judgment, arguing that Abba's allegations do not describe an injury caused by an "accident" within the meaning of the Montreal Convention. (Def.'s MSJ [23-11].)

## DISCUSSION

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When considering a motion for summary judgment, the court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The movant bears the initial burden to demonstrate that there is no genuine dispute of material fact, and judgment is warranted as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Only if the movant meets this burden does the burden shift to the non-movant to articulate specific facts confirming the existence of a genuine issue of material fact. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 88 (1990).

On this motion, only one issue is in dispute: whether the circumstances Abba alleges describe an "accident" under the Montreal Convention. The Montreal Convention provides that a "carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft." Convention for the Unification of Certain Rules for International Carriage by Air, *opened for signature* May 28, 1999, ICAO Doc. 9740 (entered into force Nov. 4, 2003), *reprinted in* S. TREATY DOC. No. 106-45, 1999 WL 33292734 (2000) [hereinafter "Montreal Convention"]. Although the text of the Montreal Convention does not define the term "accident," the Supreme Court has held that it is "'an unexpected or unusual event or happening that is external to the passenger,' and not 'the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft.'" *Olympic Airways v. Husain*, 540 U.S. 644, 650-51 (2004) (quoting *Air France v. Saks*, 470 U.S. 392, 405-06 (1985)) (interpreting Article 17 of the Warsaw Convention[2]).

---

[2]    The Montreal Convention superseded the Warsaw Convention, a prior international agreement that set out rules for international airlines. Montreal Convention, *supra*, at pmbl. Compared to Article 17 of the Warsaw Convention, Article 17 of the Montreal Convention is "substantively unchanged." *Lynn v. United Airlines, Inc.*, No. 15-CV-7041, 2017 WL 4357387,

*Lee v. Air Canada* illustrates the scope of an airline's liability under this test. 228 F. Supp. 3d 302 (S.D.N.Y. 2017). The plaintiff in *Lee* was in an aisle seat when another passenger, attempting to load his own bag into an overhead compartment, lost his balance and dropped the bag onto the plaintiff's head. *Id.* at 304. The passenger brought suit under the Montreal Convention. *Id.* at 305. The airline conceded that the plaintiff's injury was caused by an external event that was unexpected or unusual, but argued that the plaintiff was additionally required to show some "causal involvement from the carrier." *Id.* at 310. The court disagreed, holding that liability under the Montreal Convention applies so long as the requirements for an accident are met; fault does not figure into the analysis. *Id.*

An extrinsic event need not be the sole cause of injury, moreover; the passenger need only "prove that some link in the [causal chain] was an unusual or unexpected event external to the passenger." *Saks*, 470 U.S. at 406. In *Olympic Airways*, after an airline's flight attendants declined to permit a passenger to move from the smoking section, the passenger suffered an asthma attack and died. 520 U.S. at 653. The district court found that the flight attendant's conduct was unexpected and unusual in light of industry standards, and both the Ninth Circuit and the Supreme Court affirmed. *Id.* at 647-48, 657. Although the Court acknowledged that one cause of the passenger's death was "his own internal reaction—namely, an asthma attack—to the normal operation of the aircraft," it found sufficient that the flight attendant's refusal to move him was also a proximate cause, and this sufficed to describe an "accident." *Id.* at 654.

---

at *2 (N.D. Ill. Oct. 2, 2017). The State Department Explanatory Note that accompanied the Montreal Convention to the United States Senate for ratification stated, with regard to Article 17, "It is expected that this provision will be construed consistently with the precedent developed under the Warsaw Convention and its related instruments." Explanatory Note to the Montreal Convention, Art. 17, *reprinted in* S. TREATY DOC. No. 106-45, 1999 WL 33292734 (2000). Accordingly, courts apply jurisprudence interpreting Article 17 of the Warsaw Convention to cases involving Article 17 of the Montreal Convention. *See, e.g.*, *Patel v. Singapore Airlines Ltd.*, 745 F. App'x 9, 11 (9th Cir. 2018); *Jacob v. Korean Air Lines Co.*, 606 F. App'x 478, 480 (11th Cir. 2015); *White v. Emirates Airlines, Inc.*, 493 F. App'x 526, 529 (5th Cir. 2012); *Lynn*, 2017 WL 4357387, at *2.

Here, Abba's decision to attempt to push past the beverage cart was an internal reaction to the normal functioning of the airline—namely, the use of a beverage cart. But Abba contends that there was something unexpected or unusual about the manner in which the flight attendant moved the beverage cart as he was attempting to pass it. This allegation derives principally from one line in Abba's deposition, where he states that the flight attendant "turned [the beverage cart] the wrong way towards me." (Abba Dep. at 27, Ex. F. to Battista Aff.) Later on, upon examination by his own attorney, Abba was asked, "And so it was your understanding that she misdirected the cart and that contributed to your fall," and Abba responded, "Yes. Yes. I think so, but it was not on purpose."

These statements are susceptible of multiple readings. One is, as British Airways asserts, that the flight attendant was pulling the beverage cart away from Abba to give him room to walk by, and that this action nevertheless caused the wheels to jut out, causing Abba's fall. This reading is consistent with Abba's allegation that he tripped over one of the wheels of the cart. It also comports with Abba's belief that the flight attendant, "tried to move the cart so I would have more room to walk by." (Abba Dep. at 28.) This set of circumstances arguably involves no event that could qualify as an accident; there is nothing facially unexpected or unusual about moving a beverage cart that a passenger is pushing past, and Abba has identified no evidence that, like the conduct of the flight attendant in *Olympic Airways*, the decision to pull a beverage cart away from a passenger violated an industry standard.

Abba argues for a different interpretation of his testimony, however. His briefing papers suggest that as he was passing the beverage cart, the flight attendant inadvertently pushed it in his direction. (Pl. Resp. Def. MSJ [27-6] at 3 ("Rather, according to the deposition of the Plaintiff, the 'unexpected or unusual event or happening external to the passenger' was the movement of the beverage cart by the flight attendant in the direction of the Plaintiff as he was attempting to pass the beverage cart.").) In this reading, Abba's subjective belief that the flight attendant "tried to move the cart so that [he] would have more room to walk by" describes an event that took place

*before* Abba began to pass the beverage cart, after which the flight attendant inadvertently moved the beverage cart to fall back in Abba's direction, either by letting go or by pushing it. (Abba Dep. at 28.) This reading, in the court's view, does describe an unexpected or unusual event extrinsic to Abba. As *Lee* and *Olympic Airways* illustrate, it is of no consequence that Abba believes the flight attendant was not at fault, or that Abba's own decision to push past the cart was one cause of his injury. Much like an item of luggage falling on a passenger, a cart being pushed onto (or falling onto) a passenger is an unexpected or unusual event extrinsic to the passenger.

Although it is far from certain that the Plaintiff's reading of Abba's testimony is the accurate one, British Airways has not carried its burden of disproving it as a matter of law. Consequently, Defendant's motion for summary judgment [23] is denied.

ENTER:

Dated: March 26, 2019

_____

REBECCA R. PALLMEYER
United States District Judge